# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

## APPEAL NO. 22-11884

---

### UNITED STATES OF AMERICA
*Plaintiff-Appellee,*

**v.**

### SAMUEL CHRISTOPHER TEMPLEMAN
*Defendant-Appellant.*

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
(Jacksonville Division, Case No. 3:21-cr-19-MMH-PDB)

---

### INITIAL BRIEF OF APPELLANT SAMUEL TEMPLEMAN FILED PURSUANT TO
## *Anders v. California*, 386 U.S. 738 (1967)

---

*A. Fitzgerald Hall, Esq.*
**Federal Defender**
**Middle District of Florida**

*Stephen J. Langs, Esq.*
**Florida Bar 0137227**
**Federal Defender's Office**
**Middle District of Florida**
**201 South Orange Avenue, Suite 300**
**Orlando, Florida 32801**
**(407) 648-6338**
**stephen_langs@fd.org**

**Appeal No. 22-11884**
*United States v. Samuel Templeman*
CERTIFICATE OF INTERESTED PERSONS

The persons listed below are interested in the outcome of this case:

Barksdale, The Honorable Patricia D.

Bonderud, Andrew Michael

Corrigan, The Honorable Timothy J.

Dalton, The Honorable Roy B.

Grant II, Maurice C.

Hall, A. Fitzgerald

Handberg, Roger B.

Hoppmann, Karin

Howard, The Honorable Marcia Morales

Kahn, Conrad

Karase, Kelly

Langs, Stephen J.

Lopez, Maria Chapa

Minor victim whose identity is protected

Rhodes, David P.

*C1 of 2*

**Appeal No. 22-11884**
***United States v. Samuel Templeman***
**CERTIFICATE OF INTERESTED PERSONS –** *cont'd*

The persons listed below are interested in the outcome of this case:

Richardson, The Honorable Monte C.

Taylor, Laura Cofer

Templeman, Deborah Lynn

Templeman, Samuel Christopher

Skuthan, James T.

Tran, Mai

No publicly traded company or corporation has an interest in the outcome of this direct criminal appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appointed Counsel is asking for the Court's permission to withdraw from further representation in this case, pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967); as such, Counsel leaves to the discretion of the Court on whether oral argument is warranted for this direct criminal appeal.

## PRELIMINARY STATEMENT

As of this briefing, the Appellant, Samuel Christopher Templeman, is 48-years-old. He remains in custody serving the 13-year, 4-month prison sentence rendered by the district court. Though he has every right to challenge his cause on appeal, appointed Counsel approaches the Court, as well as Mr. Templeman, with the advice and counsel that there are simply no non-frivolous issues to raise and pursue in this forum. Consequently, given the *Anders* process governing these kinds of questions, Counsel herewith files his motion to withdraw from further representation along with the required briefing to help and assist the Court in its required review of the record-on-appeal. *See United States v. Edwards*, 822 F.2d 1012, 1013 (11th Cir. 1987) ("[u]nder *Anders*, should an attorney seek to withdraw, he must file a brief pointing the court to any argument which may arguably support an appeal").

This, … this is a tragic case. It's difficult, it's challenging – whether spiritually, or morally, or emotionally – and Counsel certainly represents to Mr. Templeman the pursuit of his professional responsibilities as well as the station of his capacity as an officer of the Court. Though it's my opinion, after a diligent and assiduous review of the record, that there are no non-frivolous issues, questions, or arguments for this Court's studied review, I do so begrudgingly, as my oath is to

zealously represent my client. But, if the Court should find otherwise, that there exists *something* amiss in the process and procedures below, that the district court was mistaken or erred at some degree, that Mr. Templeman was denied his right to fairness and due process, Counsel urges for the opportunity to brief the merits of any of the Court's concerns after independently reviewing the case on appeal. *See, e.g., United States v. Budowski*, 828 F. App'x 693, 693 (11th Cir. 2020) ("*Anders* requires that the reviewing court (1) satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal; and (2) determine, based on an independent review of the record, that counsel has correctly concluded that the appeal is frivolous") (internal quotations omitted).

In short, as will be explored below, Mr. Templeman along with his wife, Deborah Lynn Templeman, … maybe the euphemistic word to say is "helped," maybe the word is "used," … their teenage daughter to engage in prostitution. Worse still, the Templemans' daughter passed away at the end of last year, 2022.[1] Counsel here offers his express condolences to Mr. Templeman and Mrs. Templeman. The

---

[1]    *See* Doc. 119, pages 18 and 19 ("I think I need to make a record that the victim has passed away," of which, "she passed away from a drug overdose I believe it was in October of last year [2022]).

money the Templemans' daughter made from her calls went to support her drug addiction as well as that of Mr. Templeman. The Templemans were indicted last year, in February 2021. Mr. Templeman resolved his case in a written plea agreement with the government. *See* Doc. 59 (as did his wife, *see* Doc. 66). He pled to one count of conspiring to traffic a child for commercial sex, in violation of 18 U.S.C. § 1594(c). By doing so, Mr. Templeman exposed himself to a life sentence. The Sentencing Guidelines were calculated by the district court to include a total offense level 38, a criminal history category I, and a recommended prison range between 235 to 293 months (or 19 years, 7 months to 24 years, 5 months; roughly 19½ to 24½ years). The district court varied *below* that score and sentenced Mr. Templeman to 160 months or 13 years, 4 months in prison (call it just under 13½ years). By way of comparison, Mr. Templeman's wife, Deborah Lynn, was sentenced to 6 years' imprisonment.

Given his written plea agreement, however, Mr. Templeman expressly gave up his right to challenge or appeal his sentence on any ground, save four exceptions: (1) he may appeal a sentence that is more than the statutory maximum (in this case, that's life (and a 13½-year prison sentence is not more than life, nor is it illegal)); (2) he may appeal a sentence that is above the calculated guidelines range (in this case, his sentence was the result of a downward variance and is *below* the calculated

prison range); (3) he may appeal a sentence that violates the Eighth Amendment (but no objection on this ground was preserved in the district court and would otherwise be subject to *plain error review* if even appropriately raised in good faith when a 13½-year prison sentence is measured against a possible life sentence); or, (4) he may have appealed his sentence had the government appealed first (but that did not happen here). Consequently, without application of any one of the enumerated exceptions identified in his plea agreement with the government, Mr. Templeman is otherwise bound by the terms and conditions of his contract – he waived his right to challenge his sentence on appeal and appointed Counsel may not in good faith pursue an appeal here without the blessing and consent of this Court. *See, e.g.,* Doc. 115, page 24; *see also United States v. Boyd*, 975 F.3d 1185, 1192 (11th Cir. 2020) (noting the defendant's initialing and signing the plea agreement, which stated he had read the agreement, discussed it with counsel, and understood the agreement's terms, made it manifestly clear that he had knowingly and voluntarily made the waiver).

Recognizing that federal criminal defendants have a right to a direct appeal of their judgments and sentence ("a first appeal as of right"), *see, e.g., Pennsylvania v. Finley*, 107 S. Ct. 1990, 1992-1993 (1987); *Douglas v. California*, 83 S. Ct. 814 (1963); 18 U.S.C. § 3742(a), Mr. Templeman respectfully invokes that opportunity

now. Conversely, the Supreme Court established: "In [*Anders v. California*, 87 S.

Ct. 1396 (1967)], this Court held that when an attorney appointed to represent an

indigent defendant on direct appeal finds a case wholly frivolous:

> '[H]e should so advise the [appellate] court and request permission to
> withdraw. That request must, however, be accompanied by a brief
> referring to anything in the record that might arguably support the
> appeal. A copy of counsel's brief should be furnished the indigent and
> time allowed him to raise any points that he chooses; the court – not
> counsel – then proceeds, after a full examination of all the proceedings,
> to decide whether the case is wholly frivolous.'"

*Pennsylvania v. Finley*, 107 S. Ct. at 1992-1993 (quoting *Anders*, 87 S. Ct. at 1400).

Counsel for Mr. Templeman, having taken a diligent and assiduous review

and study of the record-on-appeal, finds himself in the unfortunate position of

submitting the instant *Anders* brief – it is Counsel's considered and professional

opinion that there are simply no non-frivolous issues to afford this Court's comment

in a case involving guilty pleas, a written plea agreement (expressly contemplating

Mr. Templeman's agreement to waive his right to appeal the district court's

sentence), and a legally permissible (though, maybe (?), disagreeable) sentence.[2]

---

[2] Counsel has certainly raised his doubts before about the propriety of a sentence
outside and below the recommended guidelines range in other cases before the
Court. But, as further explored below, given this Circuit's standards, precedence,
and jurisprudence governing *substantive reasonableness review*, no non-frivolous
issue (or issues) exists to properly and in good faith challenge the lower court's

Generally, then, once an *Anders* brief is filed, a reviewing court is required to conduct a full examination of the record to decide whether the case is wholly frivolous and only after that inquiry is complete may it consider the appeal on the merits. *See United States v. Gholston*, 932 F.2d 904, 904 (11th Cir. 1991). The change-of-plea transcript in this case is 35-pages long (*see* Doc. 115) and the sentencing transcript is 113-pages long (*see* Doc. 119). After pursuing a "conscientious examination" of the entire record-on-appeal, Counsel represents to this Honorable Court that an appeal would be frivolous – in light of undersigned's duty to prepare a brief that sets out *any* irregularities in the trial, plea, or sentencing process, the foregoing will attempt to isolate and identify potential errors which, in the judgment of the client, another attorney, or this Court might arguably be found to be meritorious. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 350 (1988); *United States v. Blackwell*, 767 F.2d 1487, 1487-1488 (11th Cir. 1985) ("… [I]n our

---

discretion here to render the sentence it did, in fact, a sentence *below* one called for by the Sentencing Guidelines, especially when measured against the record-on-appeal as well as all the surrounding circumstances (Mr. Templeman's appeal-of-sentence-waiver doesn't help much either). *See* 18 U.S.C. § 3553(a). Conversely, should this Court disagree and find *any* merit to challenging the *substantive* (or even *procedural*) reasonableness of Mr. Templeman's sentence, Counsel respectfully asks for the benefit, time, and opportunity to brief the merits of such an issue (or issues) for the Court's review and consideration.

contemporary era of 'hyperlexis' it has become apparent that often the best service an advocate can render both his client and the court is a candid expression of his or her belief that the claim at issue is without merit."). In sum, Counsel has not presented any arguments, but, rather, has merely highlighted the possible issues and concerns Mr. Templeman may be interested in presenting, along with the relevant facts and law. *See Blackwell*, 767 F.2d at 1487.

TABLE OF CONTENTS

**Contents**                                                    **Page**

Certificate of Interested Persons ................................................... *C1 of 2*

Statement Regarding Oral Argument ......................................... *i*

Preliminary Statement ................................................................ *ii*

Table of Contents .................................................................. *viii*

Table of Citations ..................................................................... *xi*

Statement of Subject Matter and Appellate Jurisdiction ............................. 1

Statement of the Issues ............................................................. 1

Statement of the Case ............................................................... 3

    Course of Proceedings and Disposition in the Court Below ........................... 4

    Statement of the Facts .......................................................... 6

    Standards of Review ........................................................... 12

Summary of the Arguments ........................................................ 16

Arguments and Citations of Authority ......................................... 17

    *After a conscientious examination and study of the record-on-*
    *appeal, Counsel would humbly advise this Court as well as Mr.*
    *Templeman that the matter presents as wholly frivolous, and, as*
    *a consequence, respectfully requests leave and permission to*
    *withdraw from the case* ........................................................ 18

TABLE OF CONTENTS -- *continued*

**Contents**　　　　　　　　　　　　　　　　　　　　　　　　　**Page**

Arguments and Citations of Authority ..................................................................... 17

　　　*The integrity of the process below; i.e., there does not appear to be any irregularities to the guilty plea in this case nor any material violation of Rule 11* ................................................................ 22

　　　*Questioning the validity of the sentence imposed* ................................... 30

　　　*Whether there exists an Eighth Amendment challenge* .......................... 39

　　　*Whether Mr. Templeman's sentence is reasonable, as a matter of law* ...................................................................................................... 42

　　　*Might there exist any claims of ineffective assistance on this record* .................................................................................................... 49

Conclusion ............................................................................................................. 52

Certificate of Compliance ..................................................................................... 54

Certificate of Service ............................................................................................. 54

# TABLE OF CITATIONS

**Federal Cases**                                                    **Page(s)**

\*\*\* *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967) ...................... *passim*

*Douglas v. California*, 83 S. Ct. 814 (1963) ............................................... *v*

*Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007) ....................... 14

*Greer v. United States*, 141 S. Ct. 2090 (2021) ........................................ 13

*Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680 (1991) ........................... 40

*Jefferson v. Fountain*, 382 F.3d 1286 (11th Cir. 2004) ................................ 50

*Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166 (2003) ............................. 41

*Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690 (2003) ......................... 50

*McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429 (1988) .............................. 18

*Pennsylvania v. Finley*, 107 S. Ct. 1990 (1987) ..................................... *v, vi*

*Penson v. Ohio*, 488 U.S. 75, 109 S. Ct. 346 (1988) ............................. *vii*, 3

*Smith v. Robbins*, 120 S. Ct. 746 (2000) ......................................... 20, 21

*Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001 (1983) ................................. 41

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) ....................... 50

*United States v. Amalfitano*, 837 F. App'x 748 (11th Cir. 2020) ....................... 23

*United States v. Amaya-Rivas*, 784 F. App'x 671 (11th Cir. 2019) ..................... 29

*United States v. Aponte*, 461 F. App'x 828 (11th Cir. 2012) ....................... 35, 38

*United States v. Bender*, 290 F.3d 1279 (11th Cir. 2002) ............................. 49

\*\*\* *United States v. Blackwell*, 767 F.2d 1486 (11th Cir. 1985) ................... *passim*

*United States v. Boyd*, 975 F.3d 1185 (11th Cir. 2020) ............................. *v*, 31

*United States v. Buchanan*, 131 F.3d 1005 (11th Cir. 1997) .................. 34, 35, 36

*United States v. Budowski*, 828 F. App'x 693 (11th Cir. 2020) ......................... *iii*

\*\* *United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1993) ..................... *passim*

*United States v. Chimaera-El*, 757 F. App'x 846 (11th Cir. 2018) ................. 24, 25

*United States v. Clarke*, 836 F. App'x 818 (11th Cir. 2020) ......................... 5, 6

*United States v. Coglianese*, 34 F.4th 1002 (11th Cir. 2022) ......................... 47

*xi*

## TABLE OF CITATIONS – *cont'd*

**Federal Cases**                                                                                          **Page(s)**

*United States v. Da Cai Chen*, 127 F.3d 286 (2d Cir. 1997) ..................... 37

*United States v. Davila*, 749 F.3d 982 (11th Cir. 2014) .......................... 24

*United States v. De Andre Smith*, 967 F.3d 1196 (11th Cir. 2020) ......... 39

*United States v. Edwards*, 777 F.2d 364 (7th Cir. 1985) ...................... 19

*United States v. Edwards*, 822 F.2d 1012 (11th Cir. 1987) .......... *ii,* 17, 52

*United States v. Farley*, 607 F.3d 1294 (11th Cir. 2010) ................... 41, 42

*United States v. Felix*, 497 F. App'x 942 (11th Cir. 2012) ................... 13

*United States v. Foster*, 155 F.3d 1329 (11th Cir. 1998) ..................... 15

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ................... 43

*United States v. Frye*, 402 F.3d 1123 (11th Cir. 2005) ...................... 14

*United States v. Garza-Mendez*, 735 F.3d 1284 (11th Cir. 2013) ......... 43

*United States v. Gholston*, 932 F.2d 904 (11th Cir. 1991) ................ *vii*

*United States v. Gomes*, 621 F.3d 1343 (11th Cir. 2010) ............... 15, 16

*United States v. Gonzalez*, 550 F.3d 1319 (11th Cir. 2008) ............ 44, 48

*United States v. Houser*, 70 F.3d 87 (11th Cir. 1995) ..................... 24

*United States v. Howle*, 166 F.3d 1166 (11th Cir. 1999) ............... 35, 37

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) (*en banc*) ...... 42, 44

*United States v. Johnson*, 375 F.3d 1300 (11th Cir. 2004) ............ 14, 15

*United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006) ............ 40, 41

*United States v. Johnson*, 541 F.3d 1064 (11th Cir. 2008) ............... 35

*United States v. Jones*, 143 F.3d 1417 (11th Cir. 1998) ............ 12, 35, 36

*United States v. Khoury*, 901 F.2d 948 (11th Cir.) ........................ 49

*United States v. Kinard*, 472 F.3d 1294 (11th Cir. 2006) ................ 15

*United States v. Lawrence*, 758 F. App'x 808 (11th Cir. 2018) ............ 32

*United States v. Lecuyer*, 545 F. App'x 874 (11th Cir. 2013) ............. 40

*United States v. Lopez*, 562 F.3d 1309 (11th Cir. 2009) .................... 1

## TABLE OF CITATIONS – *cont'd*

**Federal Cases**                                                              **Page(s)**

*United States v. McGarity*, 669 F.3d 1218 (11th Cir. 2012) .................................. 40

*United States v. Moriarty*, 429 F.3d 1012 (11th Cir. 2005) .................................. 41

*United States v. Mozie*, 752 F.3d 1271 (11th Cir. 2014) .................................. 39, 40

*United States v. Panopio*, 836 F. App'x 839 (11th Cir. 2020) ........................... 39

*United States v. Patterson*, 595 F.3d 1324 (11th Cir. 2010) .................................. 50

*United States v. Pope*, 132 F.3d 684 (11th Cir. 1998) ................................. 14, 15

*United States v. Puentes-Hurtado*, 794 F.3d 1278 (11th Cir. 2015) ....................... 24

*United States v. Raad*, 406 F.3d 1322 (11th Cir. 2005) .................................. 16

*United States v. Rios*, 153 F. App'x 665 (11th Cir. 2005) .................................. 34

*United States v. Rodriguez-Lopez*, 363 F.3d 1134 (11th Cir. 2004) ....................... 15

*United States v. Rolle*, 806 F. App'x 775 (11th Cir. 2020) .................................. 13

*United States v. Rosa*, 123 F.3d 94 (2d Cir. 1997) .................................. 37

*United States v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010) .................................. 16

*United States v. Sanchez*, 847 F. App'x 825 (11th Cir. 2021) .................................. 30

*United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) ................................. 42, 43

*United States v. Scott*, 426 F.3d 1324 (11th Cir. 2005) .................................. 44

*United States v. Segarra*, 582 F.3d 1269 (11th Cir. 2009) .................................. 35

*United States v. Siegel*, 102 F.3d 477 (11th Cir. 1996) .................................. 13

*United States v. Smelcer*, 728 F. App'x 990 (11th Cir. 2018) ........................... 42, 43

*United States v. Smith*, 853 F. App'x 382 (11th Cir. 2021) .................................. 15

*United States v. Smith*, 983 F.3d 1213 (11th Cir. 2020) .................................. 49

*United States v. Stanley*, 739 F.3d 633 (11th Cir. 2014) .................................. 14

*United States v. Talley*, 431 F.3d 784 (11th Cir. 2005) .................................. 48

*United States v. Trailer*, 827 F.3d 933 (11th Cir. 2016) .................................. 43

*United States v. Villanueva*, 716 F. App'x 928 (11th Cir. 2018) ....................... 39, 40

*United States v. Vonn*, 535 U.S. 55, 122 S. Ct. 1043 (2002) .................................. 13

## TABLE OF CITATIONS – *cont'd*

**Federal Cases**                                                             **Page(s)**

*United States v. Wade*, 458 F.3d 1273 (11th Cir. 2006) ............................................. 5

*United States v. Waterson*, 749 F. App'x 823 (11th Cir. 2018) ........................ 40, 41

*United States v. Weaver*, 275 F.3d 1320 (11th Cir. 2001) ............................... 14, 36

*United States v. Williams*, 526 F.3d 1312 (11th Cir. 2008) ..................................... 43

*United States v. Wright*, 752 F. App'x 952 (11th Cir. 2019) ................................... 48

**Federal Statutes**

18 U.S.C. § 1594 ............................................................................... *iv*, 3, 4

18 U.S.C. § 3231 ........................................................................................... 1

18 U.S.C. § 3553 ................................................................................ *passim*

18 U.S.C. § 3742 ................................................................................ *passim*

28 U.S.C. § 1291 ........................................................................................... 1

28 U.S.C. § 1294 ............................................................................................ 1

28 U.S.C. § 2255 ............................................................................... 49, 50

**Other**

11th Cir. R. 27-1(a)(8) ............................................................................. 53

Fed. R. App. P. 32(a)(7)(B) ..................................................................... 54

Fed. R. App. P. 32(a)(7)(B)(iii) ............................................................... 54

Fed. R. Crim. P. 11 ............................................................................ *passim*

Fed. R. Crim. P. 52(b) .............................................................................. 16

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is a direct appeal from the final judgment in a criminal case, entered by the United States District Court, Middle District of Florida, Jacksonville Division, on May 18, 2022, *see* Doc. 102 (the district court case number is 3:21-cr-19-MMH-PDB). The district court had original jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231. The Appellant and Defendant, Samuel Christopher Templeman, timely filed a notice of appeal on June 1, 2022. *See* Doc. 105. This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. §§ 1291 and 1294. *Cf., e.g., United States v. Lopez*, 562 F.3d 1309, 1313 (11th Cir. 2009) (holding that "the deadline in Rule 4(b) for a defendant to file a notice of appeal in a criminal case … is not jurisdictional" and that "the deadline in Rule 4(b) for criminal defendants is not jurisdictional").

## STATEMENT OF THE ISSUES

Undersigned Counsel presents "what is perhaps the most unsettling circumstance which may confront an advocate under our adversary system of justice, counsel's motion to withdraw from representation of his client on appeal upon his conscientious belief that the appeal is frivolous." *United States v. Blackwell*, 767 F.2d 1486, 1487 (11th Cir. 1985) (citing *Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400 (1967)).

1

This case involves a written plea agreement (*see* Doc. 59) with the government, a guilty plea, and sentence. Despite the record-on-appeal, Undersigned Counsel – as an officer of the court – represents after a diligent, assiduous, and conscientious reading and analysis of the case-at-bar, there does not appear to exist any non-frivolous issues that would pose a meritorious or good faith review by this Honorable Court in this specific direct criminal appeal. There are no non-frivolous issues that can arguably be raised challenging the structural confidence of the proceedings below, the rulings therefrom, or the absence or lack of any due process afforded to all parties-at-interest. Moreover, there are no non-frivolous issues, questions, or concerns stemming from the sentencing matters – even recognizing that the district court sentenced Mr. Templeman to something less than what was called for by the Sentencing Guidelines.

In sum, after a "conscientious examination" of the entire record-on-appeal, Counsel represents to this Honorable Court that an appeal would be frivolous given all the surrounding circumstances and an organic and holistic review, study, and analysis of the case as it comes to the Court. As such, in light of undersigned's duty to prepare a brief that sets out *any* irregularities in the trial, plea, or sentencing process, the foregoing will attempt to isolate and identify potential errors which, in the judgment of the client, another attorney, or the Court might arguably be found to

be meritorious. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 350 (1988); *Blackwell*, 767 F.2d at 1487-1488 ("… [I]n our contemporary era of 'hyperlexis' it has become apparent that often the best service an advocate can render both his client and the court is a candid expression of his or her belief that the claim at issue is without merit.").

## STATEMENT OF THE CASE

As of this *Anders* brief, Mr. Templeman is 48-years-old. He pled guilty to one count of conspiring to traffic a child (his minor teenage daughter) for commercial sex, in violation of 18 U.S.C. § 1594(c), under the terms and conditions of a written plea agreement with the government. He was exposed to a maximum sentence of life; his guidelines recommended a sentence between 235 and 293 months. The district court varied below the score and sentenced Mr. Templeman to 160 months in prison followed by ten years' worth of supervised release. *See* Doc. 119, page 104. In light of his contract with the government, he agreed to waive or give up his right to challenge his sentence on appeal. Given the exceptions to his appellate waiver ostensibly do not apply here, there does not appear to be an avenue, at least on direct appeal, to pursue any immediate relief from this Court. Difficult as it is, it is Counsel's professional opinion there are simply no non-frivolous issues to raise

and brief for this Court's study, review, and answer.[3] As such, appointed Counsel files the instant *Anders* brief along with his motion to withdraw from further representation.

### Course of Proceedings and Disposition in the Court Below

Mr. Templeman, along with his wife and co-defendant, Deborah Lynn Templeman, were charged in a three-count indictment returned and filed on February 25, 2021. *See* Doc. 1. Count One charged both Mr. and Mrs. Templeman with conspiring to traffic a child for commercial sex, in violation of 18 U.S.C. § 1594(c). Count Two charged Mr. Templeman with the substantive offense of trafficking a minor for commercial sex; and Count Three charged Mrs. Templeman with possession of child pornography.

Mr. Templeman was arrested on March 16, 2021, and brought before the court for his initial appearance and arraignment the same day. *See* Doc. 14. The Federal Defender's Office was appointed to represent Mr. Templeman going forward. He

---

[3]    Should the Court find, after an independent examination of the record-on-appeal, differently from undersigned, certainly, Counsel respectfully asks for and invites the opportunity to brief the merits of any issue identified by the Court that warrants attention and scrutiny for harmful error.

was also ordered detained and has been in custody since that time. *See* Docs. 20, 22, and 34.

Mr. Templeman successfully negotiated a written plea agreement with the government, by which the prosecution dismissed Count Two in exchange for Mr. Templeman's guilty plea to Count One. *See* Doc. 59 (the written plea agreement). The change-of-plea hearing was held on June 17, 2021. *See* Doc. 57.

The district court accepted Mr. Templeman's guilty plea on July 20, 2021, and sentencing was held over until May 17, 2022. *See* Docs. 69 and 98. The court calculated his Sentencing Guidelines to include a total offense level 38, criminal history category I, and advisory prison range between 235 and 293 months. *See* Doc. 119, page 7.

Significantly, when asked by the district court whether Mr. Templeman carried any objections to the factual recitation of the Pre-Sentence Report (the PSR) or the proposed calculation of the Sentencing Guidelines, *see* Doc. 119, page 6, trial counsel for Mr. Templeman answered, "No, Your Honor." *See id.* Said differently, Mr. Templeman did not raise or assert any objections to the PSR in this case. *See generally United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("[i]t is the law of this circuit that a failure to object to allegations of fact in a [PSR] admits those facts for sentencing purposes"); *see also, e.g., United States v. Clarke*, 836 F. App'x

5

818, 822 (11th Cir. 2020) ("if a defendant fails to object to the facts in his PSR, he admits those facts as true for purposes of sentencing").

The district court varied *downward*, however, and sentenced Mr. Templeman *below* the governing guidelines range to 160 months in prison followed by ten years of supervised release. *See* Doc. 119, page 104; *see also* Doc. 100 (the written judgment and sentence). The court filed its written judgment and sentence on May 18, 2022, *see* Doc. 100, along with its written *Statement of Reasons* at Doc. 101 on May 18, 2022. Mr. Templeman filed his notice of appeal on June 1, 2022, at Doc. 105. This is Mr. Templeman's appeal. He remains incarcerated serving his 160-month prison sentence.

### Statement of the Facts

The substantive (and underlying) facts of the offense are taken directly from Mr. Templeman's written plea agreement at Doc. 59, pages 17-23, and are reprinted here verbatim for the convenience of the Reader:

At all pertinent times, Samuel Christopher TEMPLEMAN

("S. TEMPLEMAN") and Deborah Lynn TEMPLEMAN ("D. TEMPLEMAN") knew that Minor Victim 1 was a child with a date of birth in February 2003. S. TEMPLEMAN and D. TEMPLEMAN had custodial rights over Minor Victim 1 from the time of her birth until July 2019, when those custodial rights were terminated. Unless otherwise specified, the events

6

described herein occurred in Duval County, Florida, and St. Johns County, Florida, both within the Middle District of Florida.

Beginning around early 2017, Minor Victim 1 began experimenting with hard drugs. Around August 2018, Minor Victim 1 began using heroin. At that time, S. TEMPLEMAN had a long-term addiction to opioid pills. At some point after Minor Victim 1 began using heroin, Minor Victim 1 observed that S. TEMPLEMAN was "dope sick," meaning that he was suffering from withdrawal effects of opioid drugs. Minor Victim 1 offered heroin to S. TEMPLEMAN, which he accepted. Thereafter, Minor Victim 1 and S. TEM PLEMAN began using heroin and cocaine base together on a routine basis. During this time, Minor Victim 1 *also* began engaging in commercial sex "dates" at the direction of a pimp in exchange for drugs.

In July 2019, S. TEMPLEMAN and D. TEMPLEMAN's custodial rights to Minor Victim 1 were terminated, and Minor Victim 1 was placed into a foster care placement in Daytona, Volusia County, Florida, within the Middle District of Florida. By court order, S. TEMPLEMAN and D. TEMPLEMAN were not permitted contact with Minor Victim 1. Minor Victim 1 shortly thereafter absconded from the foster care placement and engaged in commercial sex in exchange for a ride back to Jacksonville.

Around late August 2019, D. TEMPLEMAN informed Minor Victim I that S. TEMPLEMAN had received a sum of money as a result of an inheritance. The amount that S. TEMPLEMAN received was approximately $26,000. Minor Victim 1 agreed to meet up with S. TEMPLEMAN and D. TEMPLEMAN, and the three stayed in a Jacksonville-area hotel for several days. On September 14, 2019, S. TEMPLEMAN and D. TEMPLEMAN used $5000 of the inheritance money to make a down payment on a 2011 Honda Accord. Around the middle of September 2019, Minor Victim 1 again made contact with S. TEMPLEMAN and D. TEMPLEMAN and asked to stay with them; S. TEMPLEMAN and D. TEMPLEMAN agreed.

7

Until approximately sometime in the middle of October 2019, S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 used the inheritance money for expenses including cellular telephones, hotels, food, clothing, and drugs, with approximately half of the inheritance money being used to purchase drugs for S. TEMPLEMAN and Minor Victim 1.

During this time, D. TEMPLEMAN maintained regular employment with Allstate Insurance, where she was paid approximately $1000 every two weeks. S. TEMPLEMAN had no independent source of income. After spending all of the inheritance money, the only legitimate source of income for S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 was D. TEMPLEMAN's bi-weekly salary. D. TEMPLEMAN would cash her paychecks and provide a portion of the money to S. TEMPLEMAN and Minor Victim 1, while D. TEMPLEMAN would use the remainder to pay bills. The money from D. TEMPLEMAN's paychecks would be depleted within 1-2 days of receipt, with S. TEMPLEMAN and Minor Victim 1 spending their portion primarily on drugs. During the remaining 12-13 days of every two-week period, the only income for S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 was derived from Minor Victim 1 engaging in commercial sex acts and occasional panhandling for gas money.

Until December 11, 2019, S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 would occasionally rent hotel rooms , sometimes stay at truck stops, sometimes sleep in the 2011 Honda Accord, and sometimes sleep at Allstate Insurance (D. TEMPLEMAN's place of employment). During weekdays when D. TEMPLEMAN was working, S. TEMPLEMAN and Minor Victim 1 would drop D. TEMPLEMAN off at work and then S. TEMPLEMAN would drive Minor Victim 1 to various commercial sex "dates." The majority of the money Minor Victim 1 made by engaging in commercial sex "dates" was spent on drugs for S. TEMPLEMAN and Minor Victim 1, with some also spent on necessities such as food and hotel rooms for S. TEMPLEMAN, D.

8

TEMPLEMAN, and Minor Victim 1. During times that D. TEMPLEMAN was not working, she would also accompany S. TEMPLEMAN and Minor Victim 1 to Minor Victim 1's commercial sex dates and at times drove Minor Victim 1 to commercial sex dates.

On December 11, 2019, detectives with the Jacksonville Sheriff's Office traveled to D. TEMPLEMAN's place of employment (Allstate Insurance) in order to attempt to recover Minor Victim 1. Detective Jessica Maynard was advised by D. TEMPLEMAN's coworkers that D. TEMPLEMAN was on a break with S. TEMPLEMAN and Minor Victim 1. Detective Maynard waited inside of Allstate Insurance for D. TEMPLEMAN to return. Upon returning, D. TEMPLEMAN advised Detective Maynard that S. TEMPLEMAN had dropped her off on a side street and she had walked the rest of the way back to Allstate because S. TEMPLEMAN and D. TEMPLEMAN did not want law enforcement to know that they had custody of Minor Victim 1. D. TEMPLEMAN expressed that she wanted Minor Victim 1 to get help, and that S. TEMPLEMAN and Minor Victim 1 would be returning to pick her up at Allstate at the end of the work day. Detective Maynard remained at Allstate throughout the rest of D. TEMPLEMAN's work day, which was supposed to end at 5pm. During the day, D. TEMPLEMAN related to Detective Maynard that she was aware that S. TEMPLEMAN and Minor Victim 1 were addicted to drugs and that she would sometimes ride with them to buy drugs. D. TEMPLEMAN admitted to Detective Maynard that she knew Minor Victim 1 was engaging in prostitution and that she had taken Minor Victim 1 to "dates" both on her own and with S. TEMPLEMAN.

On December 11, 2019, while Detective Maynard was at D. TEMPLEMAN's office, S.TEMPLEMAN called D. TEMPLEMAN on the phone and the call was conducted via speakerphone such that Detective Maynard could hear their conversation. During the phone call, S. TEMPLEMAN inquired whether D. TEMPLEMAN had obtained money from a loan that they had applied for during lunch.

9

After the phone call, D. TEMPLEMAN stated to Detective Maynard that she was the only one who worked and that her money was gone, mostly having been spent on drugs for S. TEMPLEMAN and Minor Victim 1. D. TEMPLEMAN advised that the family has used the money Minor Victim 1 would make engaging in commercial sex to buy food, pay for hotels, pay bills, and other necessities.

On December 11, 2019, just prior to 5pm, S. TEMPLEMAN again called D. TEMPLEMAN at her office, and Detective Maynard was able to overhear their conversation. S. TEMPLEMAN stated to D. TEMPLEMAN that he was going to take Minor Victim 1 to a "date" to get money before they came to pick up D. TEMPLEMAN. At approximately 7pm, S. TEMPLEMAN and Minor Victim 1 arrived at Allstate to pick up D. TEMPLEMAN; Minor Victim 1 was recovered, and S. TEMPLEMAN was arrested.

After being arrested, on December 11, 2019, S. TEMPLEMAN was advised of his Miranda rights and, having been advised, agreed to be interviewed. S. TEMPLEMAN stated that he was aware that Minor Victim 1 engaged in commercial sex acts and had "started coming around" after finding out about his receipt of the inheritance money. S. TEMPLEMAN explained that he knew that Minor Victim 1 was associating with a bad crowd and using drugs, and that if she were going to do that, S. TEMPLEMAN would rather Minor Victim 1 did it with him. S. TEMPLEMAN acknowledged having taken Minor Victim 1 to a commercial sex date earlier that day and stated "I just kind of leave it in the Lord's hand" and that he hoped Minor Victim 1 knows what she's doing because "there's...a chance that she could not come back to my car." S. TEMPLEMAN stated that Minor Victim 1 posted her own advertisements for commercial sex "dates," and that both he and D. TEMPLEMAN would take her to them. S. TEMPLEMAN admitted that he, D. TEMPLEMAN, and Minor Victim I all lived off of the proceeds of Minor Victim I's commercial sex "dates." S. TEMPLEMAN stated that Minor Victim 1 would engage in car dates and that he would screen the customers, also referred to as "johns," to make sure they were safe. S. TEMPLEMAN estimated

10

having taken Minor Victim I to 20-30 commercial sex dates in total. S. TEMPLEMAN stated that he would make sure that Minor Victim I always used condoms and that sometimes D. TEMPLEMAN would buy the condoms for Minor Victim I. S. TEMPLEMAN stated that he knew QV referred to a "quick visit" which means "she wants it quick," that Minor Victim 1 "doesn't do anal at all," but would engage in vaginal sex and "probably" oral sex. S. TEMPLEMAN described the nicknames, ages, vehicles, and locations where Minor Victim 1 would meet some of her "regular" johns.

Multiple phones belonging to S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1 were reviewed, which revealed that each phone contained text message communications setting up commercial sex dates with johns. Additionally, Detective Maynard located multiple advertisements on www.skipthegames.com, which is a website based in Europe that is commonly used for arranging commercial sex dates, featuring advertisements of Minor Victim 1 for commercial sex. The www.skipthegames.com ads featured the phone numbers of the cellular telephones belonging to S. TEMPLEMAN, D. TEMPLEMAN, and Minor Victim 1, which had previously been purchased using inheritance money. One of the phones, which belonged to D. TEMPLEMAN, also contained multiple still images and a video constituting child sex abuse material depicting Minor Victim 1 engaging in masturbation and lascivious exhibition of her genital area. Minor Victim 1 had taken these images and video in order to send them to potential johns upon request. This cellular telephone was a Samsung Model SM-A102U cellular telephone, which is a facility of interstate commerce. A review of the Samsung Model SM-A102U cellular telephone revealed that it had been manufactured in Vietnam. D. TEMPLEMAN admitted to Detective Maynard that she was aware that child sex abuse material was contained on the Samsung Model SM-A102U cellular telephone and during a jail phone call after her arrest referenced having seen the child sex abuse material that was stored on her phone.

11

Doc. 59, pages 17-23; *see also* PSR ¶¶ 8-21 (offense conduct).

### *Standards of Review*

When an attorney files a brief pursuant to *Anders v. California*, 386 U.S. 738,

87 S. Ct. 1396 (1967),

> [T]he court — not counsel — then proceeds, after a full examination of
> all the proceedings, to decide whether the case is wholly frivolous. If it
> so finds it may grant counsel's request to withdraw and dismiss the
> appeal insofar as federal requirements are concerned . . . . On the other
> hand, if it finds any of the legal points arguable on their merits (and
> therefore not frivolous) it must, prior to decision, afford the indigent the
> assistance of counsel to argue the appeal.

*Id.* at 744, 87 S. Ct. at 1400; *see also United States v. Blackwell*, 767 F.2d 1486,

1488 (11th Cir. 1985) ("Counsel should review the record in this case and, setting

aside his independent and presumably unbiased view of those proceedings, submit

for our attention any irregularities which may arguably give rise to appellate

grounds."). For example, when reviewing and studying the Rule 11 plea colloquy in

this cause, *see* Doc. 115 (transcript of change-of-plea hearing), Rule 11(h) mandates

that "[a] variance from the requirements of this rule is harmless error if it does not

affect substantial rights." Fed. R. Crim. P. 11(h); *see also United States v. Jones*, 143

F.3d 1417, 1419-1420 (11th Cir. 1998). This Court "places a greater emphasis than

other circuits on the three 'core principles' addressed by Rule 11: (1) that the guilty

plea is not coerced; (2) that the defendant understands the nature of the charges; and

(3) that the defendant knows and understands the consequences of his plea." *Id.*

(citing *United States v. Siegel*, 102 F.3d 477, 481 (11th Cir. 1996)). "When

reviewing a district court's Rule 11 plea colloquy to ensure that the three core

principles of Rule 11 were not infringed, we rely solely on the basis of the record of

the Rule 11 proceedings." *Id.* (internal quotation omitted); *see also United States v.*

*Rolle*, 806 F. App'x 775, 777 (11th Cir. 2020) ("when a district court plainly errs

[during the course of a Rule 11 colloquy], to warrant relief under plain error review,

the defendant still must show a reasonable probability that he would *not* have entered

a guilty plea but for the error) (emphasis added);[4] *United States v. Felix*, 497 F.

App'x 942 (11th Cir. 2012) (generally discussing a defendant's Rule 11 colloquy

standards of review to include all the surrounding circumstances).

---

[4]    The Supreme Court states that a reviewing court should look to the entirety of
the record, not simply the transcript of the Rule 11 hearing. *See United States v.*
*Vonn*, 535 U.S. 55, 74-76, 122 S. Ct. 1043, 1054-1055 (2002) ("[w]e hold that a
silent defendant has the burden to satisfy the plain-error rule and that a reviewing
court may consult the whole record when considering the effect of any error on
substantial rights"); *see also Greer v. United States*, 141 S. Ct. 2090, 2098 (2021)
(observing that a court may examine and look to the whole or the "entire" record,
not merely the trial record, when deciding the question of plain error review – "[t]his
Court has repeatedly stated that an appellate court conducting plain-error review
may consider the *entire* record – not just the record from the *particular proceeding*
where the error occurred") (emphasis in original).

*De novo* review governs questions of law, such as challenges to the knowing and voluntary nature of a defendant's guilty plea, *see, e.g., United States v. Frye*, 402 F.3d 1123, 1126 (11th Cir. 2005) (the voluntariness of a guilty plea is generally reviewed *de novo*); *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004); *United States v. Pope,* 132 F.3d 684, 689 (11th Cir. 1998).

Moreover, the validity of an appeal-sentence-waiver in a written plea agreement is reviewed *de novo. See United States v. Weaver*, 275 F.3d 1320, 1333 n.21 (11th Cir. 2001); *United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993).

Alternatively, when studying a defendant's punishment, the sentence imposed by the district court is reviewed for reasonableness under an *abuse of discretion* standard. *See United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014); *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The Court must first ensure that the district court committed no significant procedural error. *See Gall*, 552 U.S. at 51, 128 S. Ct. at 597; *Cubero*, 754 F.3d at 892. If the Court determines that the sentence is procedurally sound, it must next examine the "substantive reasonableness" of the sentence, again under an *abuse of discretion* standard. *See United States v. Stanley*, 739 F.3d 633, 655 (11th Cir. 2014); *Gall*, 552 U.S. at 51,

128 S. Ct. at 597; *see also Smith*, 853 F. App'x at 385 ("[w]e review for an abuse of discretion the procedural and substantive reasonableness of a sentence").

Generally speaking, *de novo* review governs questions of law from the proceedings below, *see, e.g.*, *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004), *United States v. Pope*, 132 F.3d 684, 689 (11th Cir. 1998); and application of the law to sentencing issues, *see, e.g.*, *United States v. Gomes*, 621 F.3d 1343, 1345 (11th Cir. 2010) (discussing a deferential abuse of discretion standard of review when looking at the reasonableness of a sentence as well as considering de novo review to "the application of law to sentencing issues.").

In the district court, the government has the burden to establish by a preponderance of evidence that a guidelines enhancement is applicable. *See United States v. Kinard*, 472 F.3d 1294, 1298 (11th Cir. 2006). With respect to appeals dealing with the Sentencing Guidelines, this Court "reviews purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with due deference." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136-1137 (11th Cir. 2004) (internal quotation marks omitted). Factual findings will be clearly erroneous if, after reviewing all of the evidence, the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *United States v. Foster*, 155 F.3d 1329, 1331 (11th

15

Cir. 1998). Additionally, when applying the guidelines to the facts of the case, "the due deference standard is, itself, tantamount to clear error review." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (internal quotation marks omitted).

And, as always, *plain error review* applies to issues not properly preserved by objection in the court below. *See, e.g.*, *United States v. Hernandez-Fraire*, 208 F.3d 945 (11th Cir. 2000); Fed. R. Crim. P. 52(b) (stating that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention"); *see also Gomes*, 621 F.3d at 1345 ("[t]he government notes that appellant may have failed to sufficiently preserve his objection to the sentences he received, so we would review the sentence for plain error") (citing *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005)).

## SUMMARY OF THE ARGUMENTS

This brief is filed under *Anders v. California*, which provides:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae . . . . His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.

386 U.S. 738, 744 (1967). After reviewing the record herein, Undersigned Counsel has not been able to find any non-frivolous issues given all the surrounding circumstances that can be argued in good faith to this Court at this time (especially when measured against Mr. Templeman's written plea agreement (some might argue he actually received the benefit of his bargain, if not more so)). Consequently, Counsel has not presented any arguments, but has merely stated the possible issues that Mr. Templeman may be interested in presenting, along with pertinent facts of the case and relevant law.

## ARGUMENTS AND CITATIONS OF AUTHORITY

The polestar and guide when asking to withdraw from an appeal given the absence of any non-frivolous issue or issues to raise or brief, "Under *Anders*, should an attorney seek to withdraw, he must file a brief pointing the court to any argument which may arguably support an appeal." *United States v. Edwards*, 822 F.2d 1012, 1013 (11th Cir. 1987); *see also United States v. Blackwell*, 767 F.2d 1486, 1487 (11th Cir. 1985) ("in our contemporary era of 'hyperlexis' it has become apparent that often the best service an advocate can render both his client and the court is a candid expression of his or her belief that the claim at issue is without merit").

17

> ***After a conscientious examination and study of the record-on-appeal,***
> ***Counsel would humbly advise this Court as well as Mr. Templeman***
> ***that the matter presents as wholly frivolous, and, as a consequence,***
> ***respectfully requests leave and permission to withdraw from the case.***

Difficult, these *Anders* matters. The Supreme Court observed in *McCoy v.*

*Court of Appeals of Wisconsin, Dist. 1*, that "[a]fter a judgment of conviction has

been entered, [a] defendant is no longer protected by the presumption of innocence."

Thus, "[i]f a convicted defendant elects to appeal, he retains the Sixth Amendment

right to representation by competent counsel, but he must assume the burden of

convincing an appellate tribunal that reversible error occurred at trial." 486 U.S. 429,

436 (1988). Thus,

> Although trial counsel may remain silent and force the prosecutor to
> prove every element of the offense, counsel for an appellant cannot
> serve the client's interest without asserting specific grounds for
> reversal. In doing so, however, the lawyer may not ignore his or her
> professional obligations. Neither paid nor appointed counsel may
> deliberately mislead the court with respect to either the facts or the law,
> or consume the time and the energies of the court or the opposing party
> by advancing frivolous arguments. An attorney, whether appointed or
> paid, is therefore under an ethical obligation to refuse to prosecute a
> frivolous appeal.

*Id.* (footnote omitted).

After all, "[a] lawyer [ ] has no duty, indeed no right, to pester a court with

frivolous arguments, which is to say arguments that cannot conceivably persuade the

court," such that "if he believes in good faith that there are no other arguments he

18

can make on his client's behalf he is honor-bound to so advise the court and seek leave to withdraw as counsel." *United States v. Edwards*, 777 F.2d 364, 365 (7th Cir. 1985).

Here, Mr. Templeman, with the assistance of appointed and able counsel, successfully negotiated a resolution to a difficult, heart-wrenching matter that adversely impacted more than just his life, but that of his wife and his teenage daughter. He pled guilty to one count of criminal conspiracy for which the Sentencing Guidelines recommended a prison sentence between 19½ and 24½ years. He was sentenced below that; he was sentenced to roughly 13½ years. Some might suggest Mr. Templeman received more than the benefit he bargained for.

More so, Counsel is afflicted with Mr. Templeman's appeal waiver clause found in his plea agreement. *See* Doc. 59, page 12. The appeal waiver clause expressly says:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum [which in this case was up to life in prison] and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the

19

> government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Doc. 59, page 13, Part (B), ¶ 7 (emphasis in original). As discussed below, Mr. Templeman was asked whether he understood this clause, agreed to it, and knowingly waived his right to appeal as outlined by his contract with the government. *See* Doc. 115, page 24 (transcript of change-of-plea hearing). He said yes. *See id.* Without successfully challenging Mr. Templeman's appeal waiver, Counsel is hard-pressed to brief any non-frivolous issue or issues for the Court. *See United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993) (stating a sentence appeal waiver will be enforced if it was made knowingly and voluntarily).

In his dissenting opinion in *Smith v. Robbins*, 120 S. Ct. 746, 768 (2000), Justice Souter explained how "[a]ppellate counsel examines the trial record with an advocate's eye, identifying and weighing potential issues for appeal." He observed that "[t]his is review not by a dispassionate legal mind but by a committed representative, pledged to his client's interests, primed to attack the conviction on any ground the record may reveal." *Smith v. Robbins*, 120 S. Ct. at 768 (Souter, J., dissenting). "If counsel's review reveals arguable trial error, he prepares and submits a brief on the merits and argues the appeal." *Id.*

20

Justice Souter also said, however, "The limitation on the right to a merits brief is that no one has a right to a wholly frivolous appeal," from "which the judicial system's first line of defense is its lawyers." *Id.* at 768-769. In that we lawyers are "officers of the court, [we] members of the bar are bound not to clog the courts with frivolous motions or appeals . . . and this is of course true regardless of a lawyer's retained or appointed status in a given case." *Id.* at 769 (citations and quotations omitted). In short, "[i]f [appellant's] counsel is convinced, after conscientious investigation, that the appeal is frivolous, he may ask to withdraw on that account. [Then, if] the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied." *Smith v. Robbins*, 120 S. Ct. at 756 (citations and quotations omitted); *see also United States v. Blackwell*, 767 F.2d 1486, 1487 (11th Cir. 1985) ("in our contemporary era of 'hyperlexis' it has become apparent that often the best service an advocate can render both his client and the court is a candid expression of his or her belief that the claim at issue is without merit"). Unfortunately, Counsel respectfully submits that is the case here. The government charged Mr. Templeman with serious federal sex crimes and negotiated a plea bargain down to one count of conspiracy to traffic a minor for commercial sex in a written plea agreement. He pled guilty in a public forum under

21

oath in the court below, presented his case for leniency, and was sentenced by the court accordingly. As part of his agreement with the government, he agreed to waive most of his appellate rights. He comes before this Court on his right to direct review. After an assiduousness, organic, and diligent study of the matter, there does not appear to be any anomalies from the court process below; and, there does not appear to be anything that effectively, materially, or substantively denied or interfered with Mr. Templeman and his right to due process of law. As such, Counsel for Mr. Templeman submits and files this *Anders* brief and simultaneously herewith respectfully moves this Honorable Court for its blessing and consent to withdraw from further representation.

### *The integrity of the process below; i.e., there does not appear to be any irregularities to the guilty plea in this case nor any material violation of Rule 11.*

A principal question in appeals like this is to ask whether Mr. Templeman's guilty plea was made involuntarily or unknowingly. Was he coerced into pleading guilty? Was his plea a result of an informed decision or not?[5] Is there, in other words,

---

[5] *See, e.g.*, Doc. 115, page 3, at which the court asked Mr. Templeman, "This is a really important decision that anyone makes in a criminal case. Have you had enough time to think about this decision?" Mr. Templeman told the court, "Yes." *Id.* at page 4. The court also asked Mr. Templeman, "Have you had enough time to talk to [your

a violation of Federal Rule of Criminal Procedure 11 that would ordinarily warrant some kind of relief? Mr. Templeman came before the assigned magistrate judge for his change-of-plea on Thursday, June 17, 2021. *See* Doc. 115 (transcript of the change-of-plea hearing). He signed and executed a written plea agreement. *See* Doc. 59. The transcript of the change-of-plea hearing can be found at Doc. 115. It is 35-pages long. Once Mr. Templeman was placed under oath, *see id.* at page 4, the court conducted its requisite plea colloquy, pursuant to Federal Rule of Criminal Procedure 11. At the conclusion of the hearing, the court asked Mr. Templeman how he pled, guilty or not guilty. Mr. Templeman pled, "Guilty." Doc. 115, page 26. At no point during the hearing did Mr. Templeman raise or assert any objection or challenge to the proceedings. Mr. Templeman's decision to plead guilty under the terms and conditions of his written plea agreement with the government appears sound and does not present with any notions of doubt or without confidence.

"We ordinarily review a district court's decision to accept a guilty plea for abuse of discretion and its factual findings that the requirements of [Rule 11] were met for clear error." *United States v. Amalfitano*, 837 F. App'x 748, 751 (11th Cir.

---

attorney] or anyone else you care to talk to about the case and the decision to plead guilty?" *Id.* Again, Mr. Templeman answered, "Yes." *Id.*

2020) (citing *United States v. Houser*, 70 F.3d 87, 89-90 (11th Cir. 1995)). However, when a challenge to a change-of-plea hearing is made for the first time on appeal, "we will review only for plain error." *Id.* (citing *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285 (11th Cir. 2015)) (footnote omitted). To be sure, the burden a defendant suffers when trying to obtain vacatur of his plea under plain error review "is a daunting obstacle that is anything but easy to satisfy." *Id.* (quoting *United States v. Davila*, 749 F.3d 982, 994 (11th Cir. 2014)).

This Court examined Rule 11 and guilty pleas in an unpublished opinion from December 7, 2018, in *United States v. Chimaera-El*, 757 F. App'x 846 (2018). The Court recited familiar standards and well-settled principles governing the process of entering and accepting a defendant's guilty plea:

> The district court must conduct an inquiry into whether the defendant makes a knowing a voluntary guilty plea. To that end, Rule 11 requires the district court, before accepting the defendant's guilty plea, to inform the defendant of, and make sure the defendant understands, certain matters. In pertinent part, under Rule 11(c)(3)(B), if the government agrees to make a nonbinding sentencing recommendation to a district court pursuant to a plea agreement, the district court is obligated to advise the defendant that he has no right to withdraw the plea if the court does not follow the recommendation.

> When accepting a guilty plea, the district court must ensure that three core concerns underlying Rule 11 are met: (1) the guilty plea is free from coercion; (2) the defendant understands the nature of the charges against him; and (3) the defendant is aware of the direct consequences of pleading guilty. This Court has upheld plea colloquies that fail to

address an item expressly required by Rule 11 so long as the overall plea colloquy adequately addresses these three core concerns.

Where the defendant failed to object to a Rule 11 error at his plea hearing, this Court reviews only for plain error. Under the plain error standard, the defendant must show there was an error, that it was clear or obvious, and that it affected his substantial rights. To show plain error in the Rule 11 context, the defendant must show a reasonable probability that, but for the error, he would not have entered the plea. In reviewing the plea colloquy for plain error, we may consult the whole record when considering the effect of any error on substantial rights.

*United States v. Chimaera-El*, 757 F. App'x at 849-850 (citations and quotations omitted). In the case at bar, Counsel submits the organic foundation supporting Rule 11's exercise remains assured. Mr. Templeman, with the help of counsel, entered into a written plea agreement with the government. *See* Doc. 59. When brought before the court for his change-of-plea hearing, *see* Doc. 115, the record and transcript do not disclose any pause for concern in Mr. Templeman's understanding and appreciation for the case brought against him, his awareness of the possible outcomes, and the absence of any impermissible factor adversely influencing the proceedings, or Mr. Templeman' decision-making process.

By way of comparison, for example, Rule 11 mandates that the court personally address the defendant, or, in this case Mr. Templeman. *See* Fed. R. Crim. P. 11(b)(1). This was done, *see* Doc. 115 (transcript of change-of-plea hearing), as

well as Mr. Templeman having been placed under oath before the court's colloquy.

*See* Doc. 115, page 4.

Rule 11 then says, "[d]uring this address, the court must inform the defendant

of, and determine that the defendant understands, the following," Rule 11(b)(1),

which include, *inter alia*:

| Rule 11(b)(1)(A) | the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath | citing to the change-of-plea transcript, Doc. 115, pages 4-5 |
|---|---|---|
| Rule 11(b)(1)(B) | the right to plead not guilty, or having already so pleaded, to persist in that plea | page 10 |
| Rule 11(b)(1)(C) | the right to a jury trial | page 10 |
| Rule 11(b)(1)(D) | the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding | page 10 |
| Rule 11(b)(1)(E) | the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses | pages 10-11 |
| | | |

26

| Rule 11(b)(1)(F) | the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere | pages 11, 25 |
|---|---|---|
| Rule 11(b)(1)(G) | the nature of each charge to which the defendant is pleading | pages 11, 13, 14, 15, 27, 28, 29 |
| Rule 11(b)(1)(H) | any maximum possible penalty, including imprisonment, fine, and term of supervised release | page 15 |
| Rule 11(b)(1)(I) | any mandatory minimum penalty | page 15 |
| Rule 11(b)(1)(J) | any applicable forfeiture | pages 23 |
| Rule 11(b)(1)(K) | the court's authority to order restitution | pages 16, 17 |
| Rule 11(b)(1)(L) | the court's obligation to impose a special assessment | pages 15, 16 |
| Rule 11(b)(1)(M) | in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a) | pages 17, 18 |
| | | |

| Rule 11(b)(1)(N) | the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence | page 24 |
| Rule 11(b)(1)(O) | that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future | page 13 |

The transcript of the change-of-plea hearing (*see* Doc. 115) shows that Mr. Templeman was asked about and discussed not only the technical requirements of Rule 11, but the three core principals underlying the rule: Mr. Templeman pled guilty of his own volition and free from any coercion, *see* Doc. 115, page 29; he understood the nature of the charges against him, *see id.*; and was aware of the direct consequences of pleading guilty. *See id.* at pages 27-30; *see also* Fed. R. Crim. P. 11(b)(2) ("[b]efore accepting a plea of guilty … the court must address the defendant personally and in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)").

As to the factual basis supporting Mr. Templeman's guilty plea, the court discussed this matter at length at Doc. 115, pages 26-29, affording Mr. Templeman his opportunity to make comment thereon. *See id.* at page 27. *See* Fed. R. Crim. P. 11(b)(3) ("[b]efore entering a judgment on a guilty plea, the court must determine

that there is a factual basis for the plea"). Mr. Templeman did not object to the fact

of his case, whether at the change-of-plea hearing or at sentencing. *See* Doc. 115,

page 27; *see also* Doc. 119, page 6.

The lower court found Mr. Templeman "alert and intelligent; that you

understand the nature of the charge against you and the possible penalties; and you

appreciate the consequences of pleading guilty." Doc. 115, page 32. Mr. Templeman

did not challenge nor object to the court's findings. Consequently, review of the

record as it comes to the Court does not establish any error or mistake that might be

raised here, in Mr. Templeman's direct criminal appeal, such that relief or remedy

would be warranted.[6] *See United States v. Amaya-Rivas*, 784 F. App'x 671, 675

(11th Cir. 2019) ("our review of the record confirms that any errors or omissions

during the Rule 11 colloquy did not affect [the defendant's] substantial rights").

---

[6]    This Court has expressly written, "A district court should never be reversed for
a Rule 11 violation. Moreover, the government attorney and defense attorney have
an obligation to notify a district court if it mistakenly omits a concern from the Rule
11 colloquy." *United States v. Amaya-Rivas*, 784 F. App'x 671, 675 n.1 (11th Cir.
2019) (citing the Federal Judicial Center, *Benchbook for U.S. District Court Judges*
(March 1, 2013)).

### *Questioning the validity of the sentence imposed.*

A question before even reaching a merits review of Mr. Templeman's 160-month sentence must look to the validity of his sentence appeal waiver. *See generally United States v. Sanchez*, 847 F. App'x 825 (11th Cir. 2021) (discussing validity and enforceability of appeal waivers in the Eleventh Circuit).[7] Under the terms and conditions of his contract with the government, Mr. Templeman agreed to give up his right to appeal or challenge his sentence, in essence, *on any ground* save four exceptions: (1) he can appeal an *upward* variance; (2) he can appeal an illegal sentence, or a sentence imposed above the maximum permitted by law; (3) he can appeal a sentence violating the Eighth Amendment; and, (4) were the government to have appealed first, then he would have been released from his waiver and he could have pursued any issue on review.

---

[7]    This Court took pains to synthesize the state of the law in this Circuit about the enforceability and validity of appeal waivers in the matter of *United States v. Sanchez*, 847 F. App'x 825 (11th Cir. 2021). For instance, appeal waivers are valid; they are enforceable if made knowingly and voluntarily. "To demonstrate that a waiver was made knowingly and voluntarily, the government must show that either (1) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver." *Id.* at 827 (citing *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993)).

Mr. Templeman's sentence is *not* the result of an *upward* variance; rather, it is actually a sentence *below* the guidelines; it is not an illegal sentence, as the maximum penalty for his offense is up to life (and he received roughly 13½ years); the government did not appeal in this cause; and, as briefly discussed below, his sentence does not appear to violate the Eighth Amendment. In other words, it would seem the only way which Mr. Templeman could properly challenge his sentence is to have the Court find his appeal-waiver invalid for some reason. With the veracity of Mr. Templeman's plea agreement as well as the viability of his appeal-waiver clause intact (ostensibly),[8] his avenues to appellate relief are strictly narrowed.

---

[8]    In an unpublished opinion from March 9, 2021, this Court wrote:

> This court reviews *de novo* the validity of an appeal waiver. A court will enforce an appeal waiver if it was made knowingly and voluntarily. To establish that the waiver was made knowingly and voluntarily, the government must show either that: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. The touchstone of this inquiry is whether it was clearly conveyed to the defendant that he was giving up his right to appeal under most circumstances. In [*United States v. Boyd*, 975 F.3d 1185 (11th Cir. 2020)], we enforced an appeal waiver where the waiver provision was referenced during the Rule 11 plea colloquy and the defendant agreed that he understood the provision, confirmed that he had read and discussed the agreement with his counsel, and confirmed that he understood its terms.

There does not appear from the record any indication that Mr. Templeman's decision

to waive his appellate rights is vulnerable to attack or challenge. *See* Doc. 115, page

24. To be sure, Mr. Templeman's appeal waiver clause specifically prescribes:

> The defendant agrees that this Court has jurisdiction and authority to
> impose any sentence up to the statutory maximum and expressly waives
> the right to appeal defendant's sentence on any ground, including the
> ground that the Court erred in determining the applicable guidelines
> range pursuant to the United States Sentencing Guidelines, except (a)
> the ground that the sentence exceeds the defendant's applicable
> guidelines range <u>as determined by the Court</u> pursuant to the United
> States Sentencing Guidelines; (b) the ground that the sentence exceeds
> the statutory maximum penalty; or (c) the ground that the sentence
> violates the Eighth Amendment to the Constitution; provided, however,
> that if the government exercises its right to appeal the sentence
> imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is
> released from his waiver and may appeal the sentence as authorized by
> 18 U.S.C. § 3742(a).

Doc. 59, page 12 (emphasis in original). One of this Court's many opinions

discussing appeal waiver clauses came in *United States v. Lawrence*, 758 F. App'x

808 (11th Cir. 2018). In *Lawrence*, this Court wrote:

> We review the validity of a sentence appeal waiver de novo. A sentence
> appeal waiver will be enforced if it was made knowingly and
> voluntarily. To establish that the waiver was made knowingly and
> voluntarily, the government must show that either (1) the district court
> specifically questioned the defendant concerning the sentence appeal
> waiver during the plea colloquy, or (2) it is manifestly clear from the

_____

*United States v. Rosales-Gonzales*, -- F. App'x --, 2021 WL 868514, at *2 (11th Cir.
March 9, 2021) (cleaned up).

record that the defendant otherwise understood the full significance of the waiver.

758 F. App'x at 809-810 (citations and quotations omitted). The court specifically

asked Mr. Templeman about the appeal waiver at the change-of-plea hearing:

> **The court:** Skipping all the way to page 12, paragraph 7, that's titled Defendant's Waiver of Right to Appeal the Sentence. In that provision you agree the Court has jurisdiction and authority to impose any sentence up to the statutory maximum, and you expressly waive your right to appeal your sentence on any ground. That includes the ground that the [sentencing court] erred in determining the applicable guidelines range under the sentencing guidelines.
>
> There are some exceptions listed. You can appeal your sentence on the ground that it exceeds your guidelines range as determined by the Court; you can appeal your sentence on the ground that it exceeds the statutory maximum penalty; you can appeal your sentence on the ground that the sentence violates the Eighth Amendment to the United States Constitution prohibiting cruel and unusual punishment; and you can appeal your sentence if the government appeals your sentence.
>
> But absent one of those four circumstances, you waive and give up the right that you have to appeal your sentences. Do you understand that?
>
> **Mr. Templeman:** Yes.
>
> **The court:** Do you have questions about that?
>
> **Mr. Templeman:** No.
> …
>
> **The court:** Are you willing to be bound by all of the provisions in the plea agreement?

33

**Mr. Templeman:** Yes.

Doc. 115, pages 24-25.

Though this Circuit's law on appeal waivers found within a written plea agreement is generally considered well-settled, Mr. Templeman might argue in this instance that the court below failed to do a legally adequate job at eliciting a knowing and voluntary waiver. [9] This Court usually requires "that the district court specifically question the defendant concerning the sentence appeal waiver during the Rule 11 colloquy" with an exception to that rule "unless it is otherwise clear from the record that the defendant understood the significance of the waiver." *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997) (citing *United States v. Bushert*, 997 F.2d 1343, 1351-1352 (11th Cir. 1993)). "A sentence appeal waiver must be made knowingly and voluntarily. The waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood

---

[9]    *See, e.g., United States v. Rios*, 153 F. App'x 665, 666 (11th Cir. 2005) (noting that "the district court clearly and adequately questioned [the defendant] about the [appeal-]waiver by asking whether he understood that, as part of his plea agreement, he was giving up his right to appeal his sentence, except in limited circumstances").

the full significance of the waiver." *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) (citation omitted).

Importantly, a valid waiver "includes a waiver of the right to appeal blatant error." *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999). If an argument on appeal "does not fit within any of the appeal waiver exceptions," then the argument is "barred by the appeal waiver." *United States v. Segarra*, 582 F.3d 1269, 1273 (11th Cir. 2009). "Accordingly, where it is clear from the plea agreement and the Rule 11 colloquy, or from some other part of the record, that the defendant knowingly and voluntarily entered into a sentence appeal waiver, that waiver should be enforced without requiring the government to brief the merits of the appeal." *Buchanan*, 131 F.3d at 1008-1009. Moreover, this Court has "consistently considered written plea agreements to be part of the record of the Rule 11 hearing." *United States v. Jones*, 143 F.3d 1417, 1420 (11th Cir. 1998).[10] It appears from the

---

[10]    "We review the validity of a sentence appeal waiver *de novo*." *United States v. Aponte*, 461 F. App'x 828, 831 (11th Cir. 2012) (citing *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008)). "A sentence appeal waiver is valid as long as it was made knowingly and voluntarily." *Aponte*, 461 F. App'x at 831 (citing *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993)). "For a sentence appeal waiver to be valid, the government must show that: (1) the district court specifically questioned the defendant about the waiver or (2) the record makes it 'manifestly clear' that the defendant otherwise understood the full significance of the waiver." *Aponte*, 461 F. App'x at 831 (citing *Bushert*, 997 F.2d at 1351).

record-on-appeal and all the surrounding circumstances to this case, "[h]aving signed the plea agreement after receiving the assistance of counsel, [Mr. Templeman] was well aware that he was" knowingly and expressly waiving his right to appeal his sentence under the terms and conditions of his plea bargain with the government. *Jones*, 143 F.3d at 1420.[11]

Still, Mr. Templeman could (or might?) argue that the failure to specify a guideline range in the plea agreement in this case might create a justification to reject the appeal waiver and review issues on appeal. The Second Circuit, for example, has

---

[11]    *See, e.g., Jones v. United States*, -- F. App'x --, 2012 WL 2061906 at *5 (M.D. Ga. April 27, 2012) (unpublished):

> A waiver contained in a plea agreement is considered enforceable so long as the facts demonstrate that the waiver was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1342, 1350 (11th Cir. 1993). A waiver contained in a plea agreement is valid if either (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that a defendant fully understood the significance of the waiver. *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001). Accordingly, the Eleventh Circuit has held that "where it is clear from the plea agreement and the Rule 11 colloquy, or from some other part of the record, that the defendant knowingly and voluntarily entered into a waiver of appeal, the waiver should be enforced . . . ." *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).

previously recognized that an appeal waiver provision might not be enforced when the plea agreement fails to indicate the specific guideline range a defendant is facing. *See United States v. Rosa*, 123 F.3d 94 (2nd Cir. 1997). The Second Circuit has held that a knowing and voluntary waiver of the right to appeal a sentence imposed within a range specified in the plea agreement is generally enforceable. *See, e.g., United States v. Chen*, 127 F.3d 286, 288 (2nd Cir. 1997). These types of waivers (where the plea agreement specifies a sentence or range of sentence) have been allowed in the Second Circuit because, "[t]he defendant assumes the risk of error or abuse without appellate review only to the extent of the maximum sentence outlined in the plea agreement." *Rosa*, 123 F.3d at 99. When a plea agreement does not specify a sentence or sentencing range, the "defendant assumes a virtually unbounded risk of error or abuse by the sentencing court." *Id*. Accordingly, the Second Circuit held that when a plea agreement does not specify a sentence or sentencing range, the court will not summarily deny the appeal despite a waiver of appeal provision. *See id*. at 100. Rather, the court will carefully examine the facts to determine whether it warrants review. *See id*. at 101.

Moreover, in this Circuit, in the specially concurring opinion in *United States v. Howle*, 166 F.3d 1166 (11th Cir. 1999), Judge Propst noted that, while he concurred with upholding the appeal waiver in that case, "[a]s a trial judge, I have a

37

problem with obtaining a knowing and understanding waiver of appeal with respect to any potential error I might make at sentencing." *Id.* at 1169.

In an unpublished decision, however, this Court rejected a similar argument regarding a sentencing appeal waiver provision. *See United States v. Aponte*, 461 F. App'x 828, 831 (11th Cir. 2012) ("[The defendant], however, accepted the appeal waiver knowing that the plea agreement contained no specific guideline range."). So, in sum, it would seem that Mr. Templeman's appeal-waiver-clause is permissible and that he knowingly, voluntarily, and intelligently agreed to it, thus, precluding review of his sentence absent one of the enumerated exceptions: was the sentence imposed illegal? (no); was the sentence the result of an *upward* variance from the calculated guidelines range? (no); does the sentence violate the 8th Amendment? (most likely and probably not); did the government appeal first? (no).

### *Whether there exists an Eighth Amendment challenge?*

Might Mr. Templeman challenge his sentence constitutionally? Is there an Eighth Amendment argument to brief?[12] A challenge to his sentence grounded on Eighth Amendment principles would ordinarily fall outside the boundaries of Mr. Templeman's appeal waiver; hence, he otherwise could seek review of his sentence on this ground, that the district court's sentence constitutes "cruel and unusual punishment."[13] In the context of non-capital sentencing, the Eighth Amendment

---

[12] This Court reviews *de novo* whether a sentence violates the Eighth Amendment. *See United States v. Gilberto Villanueva, Jr.*, 716 F. App'x 928, 929 (11th Cir. 2018) (citing *United States v. Mozie*, 752 F.3d 1271, 1290 (11th Cir. 2014)); *see also United States v. Panopio*, 836 F. App'x 839, 841 (11th Cir. 2020) (explaining when an Eighth Amendment challenge is not first raised before the district court, the appellate court accepts the matter under plain error review; moreover, "[i]n evaluating an Eighth Amendment challenge in a noncapital case, we must first determine whether the sentence imposed is grossly disproportionate to the offense committed").

[13] In *United States v. Smith*, 967 F.3d 1196, 1213-1214 (11th Cir. 2020), the Court synthesized 8th Amendment jurisprudence thusly:

> The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." It does contain "a narrow proportionality principle that applies to noncapital sentences," but it "does not require strict proportionality between crime and sentence." Outside the context of capital punishment, successful challenges to the proportionality of sentences are rare. The reason for their rarity is that "the fixing of prison terms for specific crimes involves a substantive penological judgment

"forbids only extreme sentences that are 'grossly disproportionate' to the crime."

*Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S. Ct. 2680, 2705 (1991) (holding

that a mandatory sentence of life imprisonment without the possibility of parole was

not constitutionally disproportionate for the crime of possession of 672 grams of

cocaine, even for a first offender). Also, "[w]here a defendant fails to object to his

sentence on Eighth Amendment grounds, we review only for plain error." *United

States v. Gilberto Villanueva, Jr.*, 716 F. App'x 928, 929 (11th Cir. 2018) (citing

*United States v. Mozie*, 752 F.3d 1271, 1290 (11th Cir. 2014))."A prison sentence

within the statutory limits generally does not violate the Eighth Amendment." *United

States v. Lecuyer*, 545 F. App'x 874, 875 (11th Cir. 2013) (citing *United States v.

Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (holding that the defendant did not

meet the threshold showing of disproportionality because he was sentenced within

the statutory limits)).

The Court explained in *United States v. Waterson*:

> We recognize a "narrow proportionality principle that applies to
> noncapital sentences." *United States v. McGarity,* 669 F.3d 1218, 1255
> (11th Cir. 2012). Successful proportionality challenges under the Eighth

───────────────────

that, as a general matter, is properly within the province of legislatures,
not courts."

*Id.* (cleaned up).

40

Amendment are exceedingly rare because we give great deference to Congress in determining the types and limits of punishments. *Id.* at 1256. Accordingly, the burden is on the defendant to show that his sentence is grossly disproportionate to the crime committed. *Id.* "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (quoting *United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005)).

749 F. App'x 823, 826 (11th Cir. 2018).

But, this Court has "never found a term of imprisonment to violate the Eighth Amendment, and outside the special category of juvenile offenders the Supreme Court has only found one to do so." *United States v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010) (citing *Solem v. Helm*, 463 U.S. 277, 280-282, 303, 103 S. Ct. 3001, 3005, 3016-3017 (1983) (finding a sentence of life imprisonment without parole violated the Eighth Amendment for a petty, non-violent criminal who wrote a bad check for $100)); *see also Lockyer v. Andrade*, 538 U.S. 63, 77, 123 S. Ct. 1166, 1175 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case."). Counsel, here, cannot argue in good faith that the district court's 160-month prison sentence for a federal sex offense involving Mr. Templeman's daughter is "one of those exceedingly rare situations, in which the specified term of imprisonment violates the Eighth Amendment." *Farley*, 607 F.3d at 1344; *see also United States v. Bowers*, 811 F.3d 411, 422 (11th Cir. 2016) ("this

41

Court has never found a non-capital sentence of an adult to violate the Eighth Amendment"); *United States v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010) ("our own Court has never found a term of imprisonment to violate the Eighth Amendment").

### Whether Mr. Templeman's sentence is reasonable, as a matter of law?[14]

Reasonableness review has long been undertaken by this Court; the principles and governing standards of review have been well-recited, stated, and applied. There are any number of cases, published and unpublished, that explain this Court's reasonableness jurisprudence. In some form of brevity, Counsel outlines here: "We review the reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Smelcer*, 728 F. App'x 990, 991 (11th Cir. 2018) (citing *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (*en banc*)). "District Courts are allowed a range of choices in making sentencing decisions, and we will not disturb those choices so long as they do not constitute a clear error of judgment."

---

[14] "A sentence may be substantively unreasonable [for example] if a district court unjustifiably relied on any one § 3553(a) factor, failed to consider pertinent § 3553(a) factors, selected the sentence arbitrarily, or based the sentence on impermissible factors." *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009).

*Id.* (citing *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) *(en banc)*).

In *Smelcer*, this Court further outlined:

> A sentence may be substantively unreasonable if a district court
> unjustifiably relied on any § 3553(a) factor or failed altogether in
> considering pertinent § 3553(a) factors. *United States v. Sarras*, 575
> F.3d 1191, 1219 (11th Cir. 2009). We consider the totality of the
> circumstances when evaluating whether the sentence achieves the
> sentencing purposes of § 3553(a). *Id.* The weight given to any specific
> § 3553(a) factor is committed to the sound discretion of the district
> court. *United States v. Garza-Mendez*, 735 F.3d 1284, 1290 (11th Cir.
> 2013). The burden of establishing that the sentence is unreasonable in
> light of the record and the § 3553(a) factors lies with the party
> challenging the sentence. *United States v. Williams*, 526 F.3d 1312,
> 1322 (11th Cir. 2008).

*Smelcer*, 728 F. App'x at 991. This Court "will vacate the sentence only 'if we are

left with the definite and firm conviction that the district court committed a clear

error of judgment in weighing the § 3553(a) factors by arriving at a sentence that

lies outside the range of reasonable sentences dictated by the facts of the case.'"

*United States v. Patrick Killen, Jr.*, Appeal No. 15-15001 (11th Cir. March 29,

2018), slip op. at 26 (quoting *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir.

2016) (per curiam)). The district court must impose a sentence "sufficient, but not

greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2),

including the need to reflect the seriousness of the offense, promote respect for the

law, provide just punishment for the offense, deter criminal conduct, and protect the

public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). The sentencing court must also consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See id.* at § 3553(a)(1). The district court need not state on the record that it has explicitly considered each of the § 3553(a) factors or discuss them all individually, so long as it expressly acknowledges that it considered the party's arguments and the sentencing factors. *See United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005); *see also United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (finding a sentence reasonable in part because it was well below the statutory maximum). This Court has declared that it "will only vacate a sentence if [it is] 'left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *United States v. Lee*, -- F. App'x --, 2019 WL 1756477, at *2 (11th Cir. April 18, 2019) (quoting *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*)).

Synthesized another way, this Court says:

We review the substantive reasonableness of a sentence for an abuse of discretion in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors. A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor,

44

or (3) commits a clear error of judgment in considering proper factors by, for example, balancing them unreasonably. Even if we disagree with how the district court weighed the sentencing factors, we will only reverse a procedurally proper sentence if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the §3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.

The §3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the advisory guideline range, pertinent policy statements issued by the Sentencing Commission, and the need to avoid unwarranted sentence disparities. The district court must impose a sentence sufficient, but not greater than necessary to comply with the purposes listed in §3553(a)(2), such as the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct and protect the public from the defendant's future criminal conduct. The weight given to the § 3553(a) factors is a matter committed to the sound discretion of the district court. Accordingly, we will not second-guess a court's decision to give greater weight to certain factors rather than others as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented.

As noted above, the district court's ultimate sentence represented an upward variance from the advisory guideline range. Nonetheless, we do not presume that a sentence outside the guideline range is unreasonable and we must give due deference to the district court's decision that the § 3553(a) factors, as a whole, justify the extent of the variance. Accordingly, a court need not identify extraordinary circumstances to justify a sentence outside the guideline range, and rigid mathematical formulas and proportionality tests cannot be used to assess the reasonableness of a variance. The sentencing court need only give serious consideration to the extent of any departure from the guidelines and offer sufficient justifications for its conclusions that an unusually harsh or light sentence is appropriate.

45

*United States v. Vasquez Alvarez*, -- F. App'x --, 2021 WL 1086031, at *3 (11th Cir. March 22, 2021) (cleaned up).

Over the course of 89 pages, the district court accepted arguments and discussions and sentencing presentations from the parties-at-interest. *See* Doc. 119, pages 1-89. It then took a break from the bench, "I would like to take some time to collect my thoughts before I pronounce sentence." *Id.* at 89. "There's a lot to process," the court said, *id.* at 90, "and I want to make sure that have – that I've considered everything fully before I determine an appropriate sentence." *Id.* The court apologized "for messing with everybody's schedules, but there's a lot for me to process with all the information that's been presented, and I'd just – I'd like to have some time to do that." *Id.* at 91.

Recessing,[15] the court came back on the bench later that afternoon, having duly considered the matter, and, as transcribed from pages 91 through 104, recited a sentencing analysis over 14 pages' worth of transcripts explaining and supporting its 160-month sentence, a sentence *below* the governing guidelines range: "The circumstances of this case, I think all of the lawyers have acknowledged, are

---

[15]    The recess was from 12:01 pm until 3:37 pm. *See* Doc. 119, page 91.

horrible. It's tragic for every person that was involved in it. And so I've done my best to impose what Congress says: A sufficient, but not greater than necessary, sentence." Doc. 119, page 103.

On the other hand, should this Court, after its independent review of the record, *see* Doc. 119 (transcript of sentencing hearing), find itself with a definite and firm conviction that the district court acted unreasonably (or abused its discretion) when concluding that a 160-month prison sentence was necessary to fulfill the mandates of 18 U.S.C. § 3553(a), Counsel for Mr. Templeman respectfully asks for the chance and opportunity to brief the merits of whether the lower court abused its discretion and imposed a substantively unreasonable sentence, as a matter of law. *See United States v. Coglianese*, 34 F.4th 1002, 1009 (11th Cir. 2022) ("[a] sentence is unreasonable only if we are left with the definite and firm conviction that the district court committed a clear error of judgment arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case") (internal quotation omitted). Clearly, then, Mr. Templeman would ask that the Court vacate and set aside his sentence and remand the matter for a brand-new sentencing hearing with the aim and goal of receiving something less severe.

47

Though Mr. Templeman may be unhappy with his overall sentence, and it might rightfully be the subject of a merits brief (should this Court so deem), it does not appear to be the result of any undue or unfair process in the court below – a 160-month prison sentence followed by ten years' worth of supervised release might be subject to procedural and substantive reasonableness review;[16] whether it is also subject to reversal is a question left for this Court's independent review. *See generally United States v. Lee*, 2019 WL 1756477, at *3 ("even if this Court were to find any error, because [the defendant] failed to preserve his objection for procedural reasonableness before the district court, the standard of review here is plain error"); *Mondragon-Castaneda*, 756 F. App'x at 979 ("[w]e cannot say that, under the totality of the circumstances, the district court's decision to impose a 24-month sentence was an abuse of discretion"). Absent the appeal waiver clause that appears to preclude most avenues to reviewing his sentence, however, Mr. Templeman would humbly challenge (at least to preserve his status quo for purposes of this

---

[16]    Again, this Court has repeatedly said that "although we do not presume that a sentence within the Guidelines range is reasonable, 'ordinarily we would expect a sentence within the Guidelines range to be reasonable' *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). That a sentence is well below the statutory maximum penalty is another indicator of reasonableness. *See Gonzalez*, 550 F.3d at 1324." *United States v. Wright*, 752 F. App'x 952, 953 (11th Cir. 2019).

*Anders* brief) the district court's decisions, findings, and ultimate conclusions resolving his sentencing arguments and challenges (to the extent that he can). Ultimately, Mr. Templeman would ask to have his sentence vacated and set aside, and his cause remanded for a brand-new sentencing hearing such that he might be sentenced to something less than 13½ years in prison.

### *Might there exist any claims of ineffective assistance on this record?*

When it comes to raising ineffective assistance of counsel claims on direct appeal, "'Generally, we do not review an ineffective assistance of counsel claim raised on direct appeal' unless 'the district court has entertained the claim' and sufficiently developed the record." *United States v. Harrison*, -- F. App'x --, 2022 WL 59202, at *4 (11th Cir. Jan. 6, 2022) (quoting *United States v. Smith*, 983 F.3d 1213, 1220 (11th Cir. 2020)). Reviewing courts will "not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) (citing *United States v. Khoury*, 901 F.2d 948, 969 (11th Cir. 1990), *modified on other grounds*, 910 F.2d 713 (11th Cir. 1990)). "Filing a motion to vacate sentence under 28 U.S.C. § 2255 is the preferred method for bringing an ineffective assistance of counsel claim even when the record provides some indication that an attorney's performance was deficient." *Id.* (citing *United*

49

*States v. Patterson*, 595 F.3d 1324, 1328-1329 (11th Cir. 2010)). The accepted means "for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion 'even if the record contains some indication of deficiencies in counsel's performance.'" *United States v. Patterson*, 595 F.3d 1324, 1328-1329 (11th Cir. 2010) (quoting *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 (2003)). Mr. Templeman, then, would ordinarily be precluded from raising any claim of ineffective assistance here, on direct appeal, because the district court did not entertain or develop such a claim below. There's nothing meaningful for this Court to review.[17]

The district court asked Mr. Templeman personally at the change-of-plea hearing, "Mr. Templeman, you're represented by [the Federal Defender's Office]. Are you satisfied with him and the way he's represented you in this case?" Doc. 115, pages 30-31.

"Yes," Mr. Templeman said. *Id.* at 31.

---

[17]  To maintain a claim of ineffective assistance of counsel, Mr. Templeman would have to "show both that (1) counsel's performance was so deficient that it fell 'below an objective standard of reasonableness'; and (2) the defendant suffered 'actual prejudice,' in 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jefferson v. Fountain*, 382 F.3d 1286, 1293 n.3 (11th Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

"Do you have any complaints about the way he's represented you in this case?" *Id.*

Mr. Templeman answered the court, "No." *Id.*

In short, the record-on-appeal indicates that Mr. Templeman never raised any complaints about his counsel's performance before the trial court. Moreover, Mr. Templeman made no objection to the adequacy of his counsel at the sentencing hearing. *See* Doc. 119. Hence, any claims of ineffective assistance of counsel Mr. Templeman might entertain could not be raised at this time, i.e., direct criminal appeal, because the record below is not sufficiently developed, and Mr. Templeman never objected to his counsel's performance at either plea or at sentencing.

## CONCLUSION

Mr. Templeman has the right to have his case reviewed on appeal. *See* 18 U.S.C. § 3742. By the instant action, hopefully Mr. Templeman will take advantage of his opportunity to address the Court through the *Anders* process, and at least have his voice personally heard by the Court. In light of the above facts and law, Undersigned Counsel is unable to argue, in good faith, any non-frivolous challenge to Mr. Templeman' plea or sentence, especially when measured against his written plea agreement with the government and his waiver of right to appeal his sentence. Pursuant to the Supreme Court's directions in *Anders v. California,* therefore, Undersigned Counsel requests this Court's permission to withdraw as counsel of record and asks that the Court afford Mr. Templeman the chance, if he so desires, to supplement this appeal (and respond to Counsel's motion to withdraw) raising any issues that he contends have merit.[18]

Undersigned Counsel certifies that he is today forwarding to Mr. Templeman a copy of the appendix, this brief, and a letter advising him of his right to supplement this *Anders* brief, if he so chooses with the additional admonition that Mr.

---

[18] *See also United States v. Edwards*, 822 F.2d 1012 (11th Cir. 1987); *United States v. Blackwell*, 767 F.2d 1486 (11th Cir. 1985).

Templeman "has 30 days to file a response to the motion to withdraw with the court." 11th Cir. R. 27-1(a)(8); *see also Blackwell*, 767 F.2d at 1487 ("*Anders* thus accommodates the tensions imposed upon a lawyer, who is both an advocate for his client and an officer of his court, by setting in motion a procedure whereby the court can independently evaluate the merit of a pending appeal.").

*A. Fitzgerald Hall, Esq.*
**Federal Defender**
Middle District of Florida

*/s/ Stephen J. Langs*
**Stephen J. Langs, Esq.**
Florida Bar No. 0137227
201 S. Orange Ave., Ste. 300
Orlando, Florida 32801
Telephone (407) 648-6338
Facsimile (407) 648-6095
email stephen_langs@fd.org
*Counsel for Appellant Templeman*

## CERTIFICATE OF COMPLIANCE

This *Anders* brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) ("[a] principal brief is acceptable if it [ ] contains no more than 13,000 words") because this brief is written in Times New Roman 14-point font and contains ***11, 683 words***, **excluding** the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Friday, September 2, 2022, a true and correct copy of the foregoing *Anders* brief was filed using CM/ECF that will automatically send a copy of this document to Assistant United States Attorney Dawn A. Tiffin, United States Attorney's Office, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602; dawn.tiffin@usdoj.gov. I FURTHER CERTIFY that on 09-02-2022 a true and correct copy of the foregoing *Anders* brief, together with the unsealed portion of the appendix on appeal and a letter advising Mr. Templeman of his right to supplement this brief (i.e., I certify that I have informed and advised Mr. Templeman that he has 30 days by which to file a response to my motion to withdraw with the Court), are being sent, via U.S. Mail, to Mr. Samuel Christopher Templeman, Register Number 34827-509, who, as of this *Anders* brief is housed at FCI Yazoo City Medium, Federal Correctional Institution, P.O. Box 5000, Yazoo City, Mississippi 39194.

*/s/ Stephen J. Langs*
Stephen J. Langs, Esq.
Federal Defender's Office
Orlando, Florida 32801